### CITY OF WORCESTER *vs.* INHABITANTS OF WILBRAHAM.

In an action for the support of a pauper, whose settlement is proved to have once been in the town sued, the burden of proving that he since acquired a new settlement, under the Rev. Sts. *c.* 45, § 1, *cl.* 12, by residing for the space of ten years together in another town, is upon that town.

Absence from a town, without a definite purpose at all events to return to it as a home, will not interrupt the residence requisite to a settlement under the Rev. Sts. *c.* 45, § 1, *cl.* 12, until a new domicil is acquired elsewhere.

ACTION OF CONTRACT for the support of a pauper, a widow, alleged by the plaintiffs and denied by the defendants to have had a settlement in Wilbraham. Trial in the court of common pleas, at March term 1859, before *Mellen*, C. J., who signed this bill of exceptions :

" The plaintiffs having proved, by an agreed statement of facts, that the father of the pauper's husband (from whom he had a derivative settlement unless he had gained one in his own right) had a settlement in Wilbraham, and that the husband of the pauper resided and paid taxes in the town of Chicopee, after he was twenty one years old, in the years 1832, 1833, 1835, 1836, 1837, 1838, 1839, 1840, 1841, 1842 and 1843, and that he was not taxed there in the year 1834, rested.

" There being then no evidence in the case tending to show whether the husband resided in Chicopee in 1834, the defendants contended and asked the court to rule, that it appearing that the husband resided and paid taxes in Chicopee in 1832 and 1833 and from 1835 to 1843 inclusive, the legal presumption would be that such residence, so commenced in 1832 and 1833, was continued ; and that, as the case then stood, the presumption of law upon the facts would be that the husband gained a settlement in Chicopee, and that the burden was still upon the plaintiffs, in establishing the fact that the pauper had, at the time the supplies were furnished, a settlement in Wilbraham, to prove that the husband so removed from Chicopee at some time between 1832 and 1843 as to interrupt the continuity of residence for ten years together, called for by the Rev. Sts. *c.* 45, § 1, *cl.* 12.

" The court declined so to rule ; and ruled, that although the law presumed that a residence once acquired was continued, yet, the plaintiffs having proved that there was once a settlement in Wilbraham, the burden of proof was now upon the defendants to establish ten years' continuous residence in some other town; that the defendants must prove affirmatively that the husband's residence was in Chicopee the whole ten years, and that there was not such removal, without the intention to return, as would interrupt his residence ; and that if the husband went away from Chicopee, during the ten years, without a fixed, affirmative and definite purpose at all events to return to Chicopee as his home, he would lose his residence, though he should afterwards return without having established a domicil elsewhere. To these rulings and refusals to rule the defendants except."

*F. Chamberlin,* for the defendants. 1. The court erred in refusing to rule, that from the fact that the pauper's husband resided and paid taxes in Chicopee in 1832 and 1833, and from 1835 to 1843 inclusive, the legal presumption would extend the residence over 1834. *Harvard College* v. *Gore,* 5 Pick. 375. *Kilburn* v. *Bennett,* 3 Met. 201. *Lewis* v. *Paine,* 4 Wend. 429. *People* v. *Manhattan Co.* 9 Wend. 351. 1 Stark. Ev. (1st Amer. ed.) 36. 1 Greenl. Ev. §§ 42, 371.

The ruling, " that the defendant must prove affirmatively that the husband's residence was in Chicopee the whole ten years, and that there was not such removal without the intention to return as would interrupt his residence," was erroneous, as calling upon the defendants to prove a negative which could not be affirmatively proved. The defendants having proved a change of the original domicil, the burden was upon the plaintiffs to prove that the second domicil had been intentionally abandoned. *Harvard College* v. *Gore,* 5 Pick. 375. *Orrell* v. *Hampden Fire Ins. Co., ante,* 431.

2. The final instruction, as to what would amount to the abandonment of a residence, is opposed to the entire current of authorities. A domicil once fixed will continue to be the domicil of the party until a substitute is acquired; and notwith-

standing the absence of the party and a temporary residence elsewhere. *Jennison* v. *Hapgood*, 10 Pick. 98. *Thorndike* v. *Barton*, 1 Met. 245, 246. *Sears* v. *Boston*, 1 Met. 252. *Kilburn* v. *Bennett*, 3 Met. 199. *McDaniel* v. *King*, 5 Cush. 474. *Bulkley* v. *Williamstown*, 3 Gray, 495. Story Confl. § 47.

*D. Foster*, for the plaintiffs. 1. In an action against a town to recover for the support of a pauper whose settlement was once in that town, the burden of proof that he afterwards acquired a settlement elsewhere is on the defendants. *Attleborough* v. *Middleborough*, 10 Pick. 378. *Oakham* v. *Sutton*, 13 Met. 192. *Dover* v. *Brighton*, 2 Gray, 482. Nor did the burden of proof shift because the defendants introduced evidence tending to show the acquisition of a new settlement in Chicopee. even if that evidence was sufficient, *prima facie*, to show that such new settlement had been gained. *Powers* v. *Russell*, 13 Pick. 69. *Morrison* v. *Clark*, 7 Cush. 213. *Phelps* v. *Cutler*, 4 Gray, 139. The burden of proof was on the defendants to show such a residence as created a settlement; and there was no evidence of any residence in Chicopee in 1834.

The defendants sought to prove a settlement acquired in Chicopee by the twelfth mode mentioned in the Rev. Sts. *c.* 45, § 1, under which the pauper must have resided there "for the space of ten years together." If during the ten years the pauper was absent, the burden of proof was upon the defendants to show that he went away *animo revertendi*. *Billerica* v. *Chelmsford*, 10 Mass. 394. *Athol* v. *Watertown*, 7 Pick. 42. *Fitchburg* v. *Winchendon*, 4 Cush. 190.

2. Any absence, however short, without an intention to return, interrupts the continuity of residence so as to prevent the acquisition of a settlement; and it is wholly immaterial whether a new domicil was acquired or the old domicil was lost. Residence and domicil are not identical under the pauper laws. *Westbrook* v. *Bowdoinham*, 7 Greenl. 363. *Exeter* v. *Brighton*, 15 Maine, 60. *Jefferson* v. *Washington*, 19 Maine, 302. *Warren* v. *Thomaston*, 43 Maine, 406. *Sears* v. *Boston*, 1 Met. 250. Story Confl. § 44.

This case was decided at Boston in June 1860.

BIGELOW, J. 1. By the Rev. Sts. *c.* 45, § 3, it is provided that " every legal settlement shall continue till it shall be lost or defeated by acquiring a new one within this state; and upon acquiring such new settlement all former settlements shall be defeated and lost." The defendants in the present case, admitting that the pauper had a settlement through her husband originally in the town of Wilbraham, undertook to prove that he had acquired a new settlement in Chicopee in the twelfth mode prescribed by the Rev. Sts. *c.* 45, § 1, by a continuous residence in that town for ten years, and the payment of all taxes assessed on his poll or estate for five years within that time. This defence was in the nature of an avoidance of the case on which the plaintiffs relied to maintain their action. The defendants did not seek to meet and disprove the proposition of fact set up by the plaintiffs. The original settlement of the pauper's husband in Wilbraham was not denied; but the defendants sought to avoid its legal effect by alleging and proving the new and distinct fact, that the pauper had gained a new settlement in Chicopee, and thereby the original settlement in Wilbraham was " lost or defeated." In the strict and technical sense therefore, the burden of proof was on the defendants to establish satisfactorily that the husband of the pauper had acquired a new settlement in the manner alleged by them. *Attleborough* v. *Middleborough,* 10 Pick. 378. *Oakham* v. *Sutton,* 13 Met. 192. They had assumed the affirmative of this issue, and the duty of maintaining it by evidence rested on them throughout the trial.

2. But the instructions of the court, as to the proof necessary to show a continuous residence in the town of Chicopee within the meaning of the statute, prescribed too stringent a rule for the practical guidance of the jury in determining the question before them. Evidence of a temporary absence for a brief period, followed by a return to Chicopee, would not necessarily prove a change of domicil, or break the continuity of residence, so as to prevent the acquisition of a settlement there, although there was no proof of a fixed, affirmative and definite purpose to return, at the time the husband of the pauper left the town,

or during his absence therefrom. A person cannot be said to lose his domicil or residence by leaving it with an uncertain, indefinite, half formed purpose to take up his residence elsewhere. It would be more correct to say, that he would not lose his residence until he had gone to a new one, with a fixed purpose to remain there and not to return to his former home. Until his purpose to remain had become fixed, he could not be said to have abandoned his former residence. *Bulkley* v. *Williamstown*, 3 Gray, 493. It was said in an early case, that the domicil of a party may be considered as remaining in a place when he returns to it after a temporary absence, too short to enable him to gain a residence elsewhere ; because, in such case, it may be reasonably supposed that he absented himself with the intention of returning. *Chelsea* v. *Malden*, 4 Mass. 134. The error in the instructions in this case consisted in assuming that the mere absence of the party from the town in the year 1834 broke the continuity of his residence, unless the defendants could show affirmatively that he then had a fixed and definite purpose to return at all events to Chicopee as his home. Such temporary absence was only one fact bearing on the question of domicil or residence, and the jury would not be warranted in drawing from it the inference that the party thereby changed his home. The proper mode would have been, to have laid down the rule of law concerning the elements necessary to constitute a change of residence or domicil, and left it to the jury to determine, on all the facts in the case, whether such change had been made or not. *Exceptions sustained.*